UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

BALENCIAGA AMERICA, INC. et al.,

            Plaintiffs,

     -v-                                    No.  10 Civ. 2912 (LTS)

SEAN DOLLINGER et al.,

            Defendants.

------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

       Plaintiffs Balenciaga America, Inc., Balenciaga S.A. (together with Balenciaga

America, Inc., "Balenciaga"), Bottega Veneta, Inc. ("Bottega Veneta"), Gucci America, Inc.

("Gucci"), and Yves Saint Laurent America, Inc. ("YSL" and, collectively, "Plaintiffs") bring this

action against Sean Dollinger ("Dollinger") and Tamara Simon[1] ("Simon," and together with

Dollinger, the "Individual Defendants"), as well as Koodley.com, Inc. ("Koodley"), SpeedSmart

Holdings, Ltd., d/b/a MyPurseWorld.com, and Fashion Store, d/b/a MyPurseWorld.net,

PhoenixLuxury.net, Phoenix-Luxury.net, Phoenix-Luxury.com (collectively, "Defendants"),

asserting claims for trademark infringement, trademark counterfeiting, false designation of origin,

and trademark dilution pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., and claims for

trademark infringement, trademark dilution, unfair competition, and deceptive acts and practices

pursuant to New York state law.

       On April 6, 2010, the Court issued a temporary restraining order ("TRO") and order

---

[1]    The caption identifies Ms. Simon as Tamara Simon-Dollinger.  However, in her
affidavit filed in support of the instant motions, Ms. Simon identifies herself as
Tamara Simon.  (See Affidavit of Tamara Simon ("Simon Aff.") at 1.)

to show cause ("OSC") directing Defendants to appear on April 20, 2010, in connection with

Plaintiffs' motion for a preliminary injunction.  No Defendants appeared at the April 20, 2010,

hearing and the Court adjourned the matter to May 4, 2010.  No Defendants appeared at the May 4,

2010, hearing and the Court heard argument on Plaintiffs' motion.  On May 7, 2010, Todd

Wengrovsky, Esq., filed a notice of appearance on behalf of the Individual Defendants but did not

indicate any position on the application for a TRO or preliminary injunction, and made no response

to the OSC.  On May 17, 2010, satisfied that Plaintiffs had demonstrated their entitlement to the

preliminary injunction sought and having still received no submission from Defendants, the Court

granted Plaintiffs' motion.  (See docket entry no. 15.)  On May 19, 2010, the Individual Defendants

filed three motions seeking a modification of the preliminary injunction so as to remove any

restriction on transfers of their assets, dismissal of the Complaint for lack of personal jurisdiction,

and dismissal of the Complaint for failure to state a claim.  The Court has reviewed thoroughly the

parties' submissions and, for the following reasons, denies the Individual Defendants' motions in

their entirety.

## BACKGROUND

The following facts alleged in the complaint are taken as true for the purposes of

analysis of the Individual Defendants' motions to dismiss the Complaint.  Plaintiffs manufacture

and sell luxury products on which they display their various trademarks, which "are among the

most widely-recognized trademarks in the United States."  (Compl. ¶ 1; see also id. ¶¶ 21-37.)

Bottega Veneta, Gucci, and YSL are New York corporations, and Balenciaga America, Inc., has a

New York office.  (Id. ¶¶ 6-9.)  Defendants manufacture and sell "counterfeit versions" of

Plaintiffs' products by "copy[ing] the designs, patterns, and color schemes associated with the

Plaintiffs, [and] expressly identify[ing] the [c]ounterfeit [p]roducts as 'Balenciaga', 'Bottega

Veneta', 'Gucci', or 'YSL' products" in order to "confuse consumers into believing that Defendants['] products are genuine versions of Plaintiffs' [p]roducts or to otherwise compete with Plaintiffs' [p]roducts." (Id. ¶¶ 2-3.) Plaintiffs have not authorized, or otherwise affiliated themselves with Defendants in connection with, the manufacture and sale of the counterfeit products. (Id. ¶¶ 2, 4.)

Defendants offered counterfeit versions of a number of Plaintiffs' handbags for sale through the internet sites MyPurseWorld.com, MyPurseWorld.net, and PhoenixLuxury.net (the "Infringing Websites"). (Id. ¶¶ 40, 42, 44, 46, 49, 52-54, 57-64.) "Defendants boast [on the Infringing Websites] that their products are 'virtually indistinguishable from the designer originals in every way'" (id. ¶ 49), and the Infringing Websites identify the counterfeit products by reference to Plaintiffs' brand names (id. ¶¶ 52-54), allegedly demonstrating Defendants' purposeful attempts to confuse the public as to the source of the products sold on the Infringing Websites and to compete with Plaintiffs' genuine products. Plaintiffs have catalogued numerous instances of infringement of their marks in connection with the merchandising of various counterfeit goods on the Infringing Websites. (Id. ¶¶ 57-64.) The Individual Defendants control Koodley and, together with Koodley, are the "owners, operators, marketing agents, and/or payment processors for" MyPurseWorld.com and MyPurseWorld.net. (Id. ¶ 13.) Koodley "supported and powered" the MyPurseWorld.com internet site. (Id. ¶ 66.)

In connection with their opposition to Defendants' motions, Plaintiffs proffer, inter alia, that they hired a private investigator, Michael Falsone, to "supervise an investigation into sales over the [i]nternet to customers in the United States of various goods that make use of the [Plaintiffs'] trademarks." (Decl. of Michael F. Falsone ("Falsone Decl.") ¶ 2.) Falsone and his staff visited the Infringing Websites, captured numerous "screen shots" showing the Infringing

Websites' merchandising of counterfeit products nearly identical to those sold by Plaintiffs and

bearing Plaintiffs' trademarks and containing descriptions of the products on offer characterizing

them as "replicas" that were "indistinguishable" from Plaintiffs' genuine products (id. ¶¶ 4-60),

and purchased four counterfeit handbags, each one a replica of a different Plaintiff's product, from

the MyPurseWorld.com internet site using a credit card account (id. ¶¶ 61-84). Falsone received

an email from info@mypurseworld.com advising him that the charge would appear on his credit

card statement as "SpeedSmart Holdings." (Id. ¶¶ 64, 69, 75, 81; id. Ex. 10.)[2] The page

confirming successful processing of Falsone's order states that "[t]his purchase will appear on your

[c]redit [c]ard under the name BagStyle Online." (Id. Ex. 9.) In fact, the credit card statement

indicates that the "Transaction Description" was "Koodley.com 888-2321884" which is "[d]oing

[b]usiness [a]s . . . mypurseworld.com" and lists a Miami, Florida, "Merchant Address." (Id. ¶¶ 65,

70, 76, 82; id. Ex. 11.) The four bags were shipped, apparently from an address in China, to

Falsone at an address in New York City. (Id. Exs. 9, 10, 12, 13.) Falsone also purchased one

handbag from MyPurseWorld.net. (Id. ¶¶ 85-92.) The "confirmation page" identified the seller as

Fashion Store, located at "17 Triggs Lane, Surrey GU22 0EL, GB." (Id. ¶ 85; id. Ex. 13.) Falsone

received an email from jack@mypurseworld.net advising him, correctly, that the charge would

appear on his credit card statement as "phoenixluxury.net." (Id. 88, 92; id. Ex. 15.) The "contact

us" section of the Phoenix-Luxury.net internet site lists the same U.K. address as that provided for

Fashion Store on MyPurseWorld.net. (Id. ¶ 91.) Falsone also determined that "Defendants'

websites sell to customers in New York" on the basis of a section on MyPurseWorld.com entitled

"Testimonials" which contains at least one comment from a New York customer. (Id. ¶ 8.)

---

[2]     The page on MyPurseWorld.com relating to Falsone's purchase and entitled "Order
Information" states that "www.mypurseworld.com is owned and operated by
Speedsmart Holdings Limited, Cyprus." (Compl. Ex. 9.)

Plaintiffs further proffer that the allegedly counterfeit products offered for sale on MyPurseWorld.net appear identical to those offered on MyPurseWorld.com, suggesting that they share a common origin.  (See Decl. of Stacy Feldman ¶¶ 40-55.)  The Koodley internet site contains a section entitled "About Us" which describes Sean Dollinger as "the mastermind behind Koodley.com" who "developed" Koodley and "works on a daily basis at making Koodley.com the number one online destination for website creation and online advertising options."  (Falsone Decl. Ex. 18 (bearing a timestamp dated January 4, 2010).)  The same section of the Koodley internet site describes Tamara Simon as "the chief owner and operator of Koodley.com" who "works along with the Koodley.com team at constantly updating and perfecting the services offered."  (Id.)

Plaintiffs also proffer information regarding the involvement of Koodley and the Individual Defendants in prior trademark and counterfeiting litigation.  In 2009 Chanel, Inc., and Louis Vuitton Malltier, S.A. (the "Florida Plaintiffs"), brought an action for trademark infringement and counterfeiting in the United States District Court for the Southern District of Florida against, among others, Dollinger and Koodley.  (See Decl. of Anne M. Coyle ("Coyle Decl.").)  On June 8, 2009, Judge Ursula Ungaro issued a "Default Final Judgment" against Koodley, ordering it to pay statutory damages totaling $2,496,000 and permanently enjoining it, its officers, and "all persons in active concert and participation with it" from, inter alia, using the Florida Plaintiffs' marks, including in connection with the sale of counterfeit goods, and falsely representing themselves and a number of internet sites, including MyPurseWorld.com, as being associated with the Florida Plaintiffs.  (Coyle. Decl. Ex. 2.)  On February 1, 2010, Judge Ungaro endorsed a "Stipulated Consent Final Judgment and Permanent Injunction" against Dollinger including stipulations that Dollinger had infringed and diluted the Florida Plaintiffs' trademarks by using "names or marks which are identical to, or substantially indistinguishable from each of the

[Florida] Plaintiffs' [r]espective [m]arks," and permanently enjoined Dollinger and Simon, who was not a party to that action, from, inter alia, "selling or offering to sell counterfeit and infringing goods bearing the [Florida] Plaintiffs' [r]espective [m]arks," using those marks "in connection with the sale of any unauthorized goods," and falsely representing that they, their services, or their products were in any way associated with the Florida Plaintiffs.  (Coyle Decl. Ex. 1.)

The Individual Defendants have made factual proffers in support of their motions, including the following.  Koodley was dissolved on September 25, 2009.  (Affidavit of Sean Dollinger ("Dollinger Aff.") ¶ 5.)  The Individual Defendants are Canadian citizens who reside in the Bahamas.  (See Dollinger Aff. ¶ 3.)  The Individual Defendants deny having "ever been owners, officer[s], directors, employees, or agents of any of the websites mentioned in the Complaint."  (Second Aff. of Sean Dollinger ("2d Dollinger Aff.") ¶ 5; Simon Aff. ¶ 13.)[3]  They deny having been "involved in the sale of counterfeit merchandise" (Simon Aff. ¶ 4), having "engaged in the manufacture, distribution, and/or sale of handbags or similar goods" (2d Dollinger Aff. ¶ 3; Simon Aff. ¶ 3), having "r[u]n the day-to-day operations of Mypurseworld.com, Mypurseworld.net, Phoenixluxury.com, or Koodley.com" (2d Dollinger Aff. ¶ 8; Simon Aff. ¶ 14), and, in Simon's case, having "performed marketing services, or anything else of that nature, for any party" (Simon Aff. ¶ 11).  Dollinger maintains that "[t]he full extent of [his] involvement with any of the websites mentioned in the Complaint was that [he] performed [i]nternet marketing services for Mypurseworld.com as an outside contractor . . . ."  (2d Dollinger Aff. ¶ 11.)  Simon avers that "business of any nature was carried out by Koodley Canada," a "different entity" from Koodley "which [Simon's] partners handled while [she] was abroad" and with which Koodley

---

[3]     In his first affidavit, Dollinger made a denial of affiliation identical to that quoted above, but with respect to only Phoneix-Luxury.com and Fashion Store.  (See Dollinger Aff. ¶ 18.)

"had a processing account" (Simon Aff. ¶ 6), and that "[n]either Koodley.com (US) nor [Simon]
ever did any type of work for the websites listed in the Complaint" (Simon Aff. ¶ 8).

DISCUSSION

*Rule 12(b)(2) Motion*

        In an action arising under a federal statute that does not expressly provide for
personal jurisdiction, a federal court may exercise personal jurisdiction over a defendant to the
same extent as courts of general jurisdiction in the state in which it sits.  See Penguin Group (USA)
Inc. v. American Buddha, 609 F.3d 30, 35 (2d Cir. 2010).  In New York, federal courts first
consider whether jurisdiction is authorized by a New York statute.  Best Van Lines, Inc. v. Walker,
490 F.3d 239, 242 (2d Cir. 2007).  "If, but only if, [the] answer is in the affirmative, [courts] must
then determine whether asserting jurisdiction under that provision would be compatible with the
requirements of due process established under the Fourteenth Amendment to the United States
Constitution."  Id.  While the plaintiff bears the burden of establishing that the court may exercise
personal jurisdiction over a defendant, when a district court relies "solely on the pleadings and
supporting affidavits" to determine personal jurisdiction, "the plaintiff need only make a prima
facie showing of jurisdiction."  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d
Cir. 1994).  "Such a showing entails making 'legally sufficient allegations of jurisdiction,'
including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the
defendant.'"  Penguin Group, 609 F.3d at 35 (alteration in original) (quoting In re Magnetic
Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003)).

        The Individual Defendants do not contend that service of process was insufficient
but, rather, argue that there is no lawful factual basis for this Court's exercise of personal
jurisdiction over them.  Plaintiffs argue that personal jurisdiction may properly be exercised

pursuant to any of first three specific jurisdiction provisions under N.Y. C.P.L.R. § 302(a).  The

Court agrees that, at minimum, Plaintiffs' proffers are sufficient to demonstrate Section

302(a)(3)(ii) jurisdiction over the Individual Defendants.

> Jurisdiction pursuant to § 302(a)(3)(ii) is predicated on five elements: '(1)
> [t]he defendant committed a tortious act outside the state; (2) the cause of
> action arose from that act; (3) the act caused injury to a person or property
> within the state; (4) the defendant expected or should reasonably have
> expected the act to have consequences in the state; (5) the defendant derives
> substantial revenue from interstate or international commerce.'

Gucci America, Inc. v. Frontline Processing Corp., No. 09 Civ. 6925 (HB), 2010 WL 2541367, at

*5 (June 23, 2010) (quoting Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d

100, 106 (2d Cir. 2006)).  "Trademark infringement is a tort for jurisdictional purposes, and the

situs of this tort is considered to be where the website, or servers which maintain the website, are

located."  Id.  "A plaintiff 'need not actually prove that defendant committed a tort' to satisfy the

first element of § 302(a)(3)(ii), 'but rather need only state a colorable cause of action.'"  Id.

(quoting Sole Resort, 450 F.3d at 106).  The allegations in the complaint and documents filed in

connection with it and Plaintiffs' OSC indicate that the Koodley.com and MyPurseWorld.com

internet sites were operated from outside New York, possibly in Florida.  As the Court finds that

Plaintiffs have adequately pleaded a claim for trademark infringement against the Individual

Defendants, see infra, the first two elements are satisfied.  The third element – harm in New York –

is met by Plaintiffs' allegations of sales of counterfeit goods to New York consumers and the

presence of Plaintiffs, as the injured parties, in New York.  Bottega Veneta, Gucci, and YSL are

New York corporations, and Balenciaga America, Inc., has a New York office.  "Injury within a

state includes harm to a business in the New York market in the form of lost sales or customers. . . .

Moreover, courts in this district have specifically held that an allegation of trademark infringement

by a New York-based corporate plaintiff that alleges harm in New York is sufficient to satisfy [the third Section 302(a)(3)(ii)] element."  Gucci America, 2010 WL 2541367 at *6 (internal quotation marks and citations omitted).

Plaintiffs allege that the Individual Defendants operated MyPurseWorld.com, which was accessible from New York and displayed testimonials from New York customers attesting to purchases from the site, and processed Plaintiffs' investigator's purchases, which were ultimately delivered to the New York address that the investigator had provided through the site.  These allegations, taken as true for the purpose of the jurisdictional inquiry, suffice to establish a prima facie case that the Individual Defendants expected or should reasonably have expected their alleged operation of the internet site to have consequences in New York.  See, e.g., Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (the "reasonable expectation" element "requires that a defendant foresee that its tortious act will have *some* consequences in New York, although not necessarily the exact consequences that occurred." (emphasis in original)).  The fourth element is therefore satisfied.

Finally, Plaintiffs' allegations also suffice to demonstrate that the Individual Defendants, through their operation of Koodley and MyPurseWorld.com, derive substantial revenue from interstate or international commerce.  "The requirement for interstate commerce is intended to exclude foreign businesses that 'are of a local character.'" Gucci America,  2010 WL 2541367 at *6 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997)).  "No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the 'overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.'"  Id. at * 6 (quoting Parker Waichman Alonso LLP v. Orlando Firm, P. C., No. 09 Civ. 7401 (CM), 2010 WL 1956871, at *9 (S.D.N.Y. May 14, 2010)).

The nature of the business conducted through MyPurseWorld.com is patently not local, as it offers handbags for sale via the internet, without any apparent geographic restrictions, and claims to have sold and shipped to customers in several states and countries.  (See Falsone Decl. ¶ 8.)  Plaintiffs have therefore made a prima facie showing of personal jurisdiction over the Individual Defendants pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii).

The Fourteenth Amendment's due process clause permits a court to exercise jurisdiction over an out-of-state defendant provided that she has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The "crucial question" in deciding whether a court has jurisdiction over an out-of-state defendant is "whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' . . . 'such that [the defendant] should reasonably anticipate being haled into court there.'"  Best Van Lines, 490 F.3d at 242-43 (alterations in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)).  The Supreme Court has recognized two alternative, "independent, if conceptually overlapping, methods of demonstrating minimum contacts" under these principles: examination of either (1) "the defendant's overall activity within the forum state;" or (2) "the in-state effects of out-of-state activity."  Id. at 243 (discussing Keeton v. Hustler Magazine Inc., 465 U.S. 770 (1984) and Calder v. Jones, 465 U.S. 783 (1984)).

The Individual Defendants' alleged offering for sale of the subject goods on the MyPurseWorld.com internet site, including to New York customers whose location they knew and even reported in the "Testimonials" section of the site, demonstrates the requisite purposeful availment of the New York forum.  See, e.g., Gucci America,  2010 WL 2541367, at *9 (finding

minimum contacts where the defendant "considers itself to be a nationwide service provider, operates a website that can be viewed in New York, does business with internet merchants . . . who sell goods into New York, and even have some New York-based clients who they earn revenue from (however insubstantial)"); Chloe v. Queen Bee of Beverly Hills, LLC, 571 F. Supp. 2d 518, 528 (S.D.N.Y. 2008) ("Many courts have permitted the exercise of personal jurisdiction based on a defendant's interactive website in combination with other relevant forum contacts."); Thomas Publ'g Co. v. Indus. Quick Search, Inc., 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction here.").

Plaintiffs' allegations and evidentiary proffers indicate that it was readily foreseeable to the Individual Defendants that their conduct caused them to have significant contacts with New York, so as to render it reasonable for them to be haled into court here.  While the inconvenience to the Individual Defendants may be greater than if litigation proceeded in another forum, the other factors relevant to determining the reasonableness of exercising jurisdiction over them weigh in favor of asserting jurisdiction.  See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) (discussing the five factors that courts "must evaluate . . . as part of th[e] 'reasonableness' analysis").  "[D]ismissals resulting from the application of the reasonableness test should be few and far between."  Id. at 575 (citing Burger King, 471 U.S. at 477).  The facts alleged and the documents submitted in connection with the instant motion practice indicate that the assertion of jurisdiction over the Individual Defendants is reasonable.

*Rule 12(b)(6)* Motion

In deciding a Rule 12(b)(6) motion to dismiss a complaint, the Court accepts as true

the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard applies to all civil actions. Iqbal, 129 S. Ct. at 1953.  In adjudicating the motion, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference."  Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000).

The Individual Defendants' argument is premised on their contention that the Complaint is devoid of any allegation that they "were directly involved in activities such as reproducing Plaintiffs' trademarks, or the actual sale, or offering for sale of counterfeit goods," that they "participated in the use in commerce of Plaintiffs' trademarks, or the sale of counterfeit products," that they "participated in the creation of counterfeits or the application of those counterfeits to labels to be used in commerce," or that "Simon's former website Koodley.com sold any of the allegedly[]infringing products."  (Individual Defendants' Mem. of Law in Support of Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' 12(b)(6) Br.") 7-8 (emphasis omitted).)  The Individual Defendants note that the allegations in the Complaint "identify MyPurseWorld.com and/or MyPurseWorld.net as the websites that actually promoted the allegedly[]infringing goods."  (Id.)  The Individual Defendants essentially ask the Court to credit their denials of involvement with the Infringing Websites and discount Plaintiffs' allegations that the Individual Defendants operated, at minimum, MyPurseWorld.com.  However, the documents attached to the Complaint lend plausibility to the allegations that the Individual Defendants controlled Koodley and that, through Koodley, they managed the operations of

MyPurseWorld.com, including the processing of orders and collection of payments in connection with the allegedly infringing and counterfeit goods.  The Individual Defendants do not otherwise challenge the sufficiency of the pleading of Plaintiffs' Lanham Act claims.  They concede that Plaintiffs' state law claims are subject to the same pleading standard and simply argue that dismissal of the state law claims is warranted by "the same pleading deficiencies."  (Defs.' 12(b)(6) Br. 8.)  The Individual Defendants' motion to dismiss the Complaint for failure to state a claim is therefore denied.

> *The Asset Freeze*

The Individual Defendants' motion to modify the preliminary injunction is based principally on their contentions that "no monetary judgment against [them] is likely" because they "are not the infringing parties at issue," "had no direct involvement in the alleged infringing activities," and the Court "lacks personal jurisdiction over [them]."  ((Individual Defendants' Mem. of Law in Support of Mot. to Modify Prelim. Inj. ("Defs.' P.I. Br.") 4-5.)  For the reasons given above, these arguments are without merit.

While a court may not freeze assets solely to secure a future money judgment, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 329-33 (1999), "where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains it equitable power to freeze assets," Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc., No. 00 Civ. 8051 (JSM), 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000).  See also Hartford Fire Ins. Co. v. Evergreen Organization, Inc., No. 07 Civ. 7977 (RJS), 2008 WL 5454227, at *3-4 (S.D.N.Y. Dec. 29, 2008) (holding that a court may issue a preliminary injunction freezing assets so long as the court has "proper jurisdiction and claims . . . are equitable in nature")  North Face Apparel Corp. v. TC Fashions, Inc., No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006)

("District courts have the authority to freeze those assets which could be used to satisfy an equitable award of profits."); In re Comverse Technology, Inc. Derivative Litigation, No. 06 Civ. 1849 (NGG)(RER), 2006 WL 2568461, at *1 (E.D.N.Y. Aug. 31, 2006) ("Indeed, courts since Group Mexicano have consistently found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets."); Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of VA., 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) (same). The Lanham Act entitles a plaintiff who establishes a violation of its rights in connection with a registered trademark, "subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C.A. § 1117(a) (West 2009). The Court therefore has authority to freeze the Individual Defendants' assets insofar as they could be used to satisfy an award of their profits pursuant to Plaintiffs' Lanham Act claims. "The Court may 'exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity.'" North Face Apparel, 2006 WL 838993 at *3 (alteration in original) (quoting Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995)). However, "[t]he burden is on the party seeking relief to 'present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'" Id. (alteration in original) (quoting Cartier Int'l B.V. v. Liu, No. 02 Civ. 7936 (TPG), 2003 WL 1900852, at *1 (S.D.N.Y. Apr. 17, 2003)).

The Individual Defendants fail to recognize the Court's authority to freeze their assets in light of the equitable relief sought against them. Instead, they focus primarily on a single decision, Ashland Oil, Inc. v. Gleave, 540 F. Supp. 81 (W.D.N.Y. 1982), which involved the attachment of property pursuant to Rule 64 of the Federal Rules of Civil Procedure and New York state law and is therefore inapposite. The Individual Defendants' motion to modify the preliminary injunction so as to terminate the provisions freezing their assets is therefore denied, without

prejudice to renewal following the Individual Defendants' compliance with the Court's outstanding discovery order and upon a demonstration, through documentary proof, that particular assets are not proceeds of counterfeiting activities so as to warrant exemption of the particular assets.  See North Face Apparel, 2006 WL 838993 at *3.

The Individual Defendants also challenge the scope of the asset freeze, arguing it should be limited to assets located in the Southern District of New York.  (See Defs.' P.I. Br. 5.) Sara Lee Corp. v. Gregg, 53 Fed. R. Serv.3d 1439 (M.D.N.C. 2002), the only authority upon which the Individual Defendants rely for this contention, involved an action to attach property, pursuant to Rule 64 and North Carolina state law, in which the court apparently did not have personal jurisdiction over the defendant.  "Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under [the party's] control, whether the property be within or without the United States."  United States v. First Nat. City Bank, 379 U.S. 378, 384 (1965) (citation omitted).  In light of the determination that the Court has personal jurisdiction over the Individual Defendants, the Court has authority to freeze their assets "within or without the United States."

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motion to modify the

preliminary injunction and their two motions to dismiss the Complaint as against them are denied

in their entirety. This Memorandum Opinion and Order resolves docket entry nos. 17, 19, and 21.

The parties are directed to appear for a pretrial conference on **October 29, 2010, at**

**10:45 a.m.** and to comply with all aspects of the Initial Conference Order (see docket entry no. 4),

in connection therewith.

SO ORDERED.

Dated: New York, New York
       October 8, 2010

LAURA TAYLOR SWAIN
United States District Judge